UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| MELODY A. SEARS, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:09 CV 241 |
| | ) | |
| DAVID NEWKIRK, | ) | |
| Defendant. | ) | |

## MEMORANDUM and ORDER

Plaintiff Melody A. Sears filed this action in state court, alleging that defendant David Newkirk, a fellow employee, had slandered her and tortiously interfered with her business relationship with her (their) employer, the Indiana Harbor Belt Railroad (hereinafter, "the IHB"). Newkirk removed the action to this court, asserting that federal jurisdiction exists on the basis of both diversity of citizenship and the presence of a federal question. Presently pending before the court are Newkirk's motion to dismiss the complaint pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim (DE # 10), and Sears' motion to remand the case to state court (DE # 13), which also serves as her response to Newkirk's motion to dismiss.[1] Sears has also filed a motion to strike (DE # 21) a portion of Newkirk's response to her motion to remand.

Briefly, the allegations of Sears' complaint, which are accepted as true for present purposes, are that Newkirk, who occupied the postion of "road foreman," told

---

[1] The basis for Newkirk's assertion that a federal question exists is that Sears' claims are completely preempted by federal law, and preemption is also the basis for his argument that the claims should be dismissed. Thus, Sears' argument in her motion to remand that her claims are not preempted provides a thorough response.

numerous co-workers and other third persons that "Melody has been f**king up a lot and that c*nt will not get into the engineer program as long as I am in this position if I can help it!" (Complaint, DE # 1 at ¶ 6.) In the first count of her complaint, Sears alleges the remark was slanderous, and seeks damages for emotional, reputational and career injuries it may have caused. (Complaint, DE # 1 at ¶ 8.) In the second count, she alleges that Newkirk intentionally and tortiously interfered with her business relationship with the IHB, causing her monetary damages by preventing her from earning the additional sums that would have been obtained by career advancement. (Complaint, DE # 1 at ¶¶ 12, 14.)

### *Sears' Motion to Strike*

When Newkirk responded to Sears' motion to remand, he attached as "Exhibit A" to his response the table of contents and two provisions of the labor agreement existing between the IHB and Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees (which apparently is now known as the Transportation Communications International Union, and is hereinafter referred to as "the Union"), which he maintains is applicable to Sears' contract of employment with the IHB. Sears does not dispute the exhibit's authenticity or applicability, but has moved to strike it pursuant to FED. R. EVID. 106's rule of completeness. She argues that the absence of the complete agreement "prevents the inquiry whether any exculpatory language exists within the contract" which would "likely illustrate that it does not cover, nor could it apply to tortious conduct." (DE # 21 at 2, 3.)

2

Were the court to strike the exhibit it would be of no consequence, because Newkirk attached the same exhibit to his memorandum in support of his motion to dismiss (DE # 11-2), and Sears hasn't moved to strike that copy of it. In any event, as Newkirk has pointed out in his response to the motion to strike, Sears' remedy under RULE 106's express terms is to require the introduction of any other parts of the agreement that in fairness should also be considered, not to have the court strike it. Moreover, whether or not Sears herself has a copy of the agreement (she asserts that she does not), as a member of the Union that is a party to the agreement, she could have obtained a copy of it, avoiding any of the prejudice she speculates might be occurring. Accordingly, Sears' motion to strike is to be denied.

### *Sears' Motion to Remand*

Sears argues that this action should be remanded because both counts of her complaint are based solely on state law, and so no federal question exists; and also because the amount in controversy does not exceed $75,000, meaning that diversity jurisdiction does not exist.

First, as to the existence of a federal question, Newkirk's argument opposing remand is fairly simple to explain, but difficult to apply. The business relationship between Sears and the IHB, which he allegedly interfered with is, of course, a contract of employment, and that contract of employment is governed by the terms of the collectively-bargained labor agreement (the "CBA") existing between the Union and the IHB. (Sears attached, as Exhibit B to her complaint, a grievance filed on her behalf by

3

the Union, on the basis that–unlike every other applicant for the engineers training program—she was not interviewed for the position, in violation of the Company Clerks Rules Agreement.[2]) That CBA is, in turn, governed by the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq*. Under the RLA, "minor disputes," that is, those that grow out of grievances or require the application of the terms of a CBA to specific facts, are subject to mandatory arbitration under the RLA. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252, 261 (1994); *Atchison, T. & S.F.R. Co. v. Buell*, 480 U.S. 557, 562 (1987); *Brown v. Illinois Central R.R. Co.*, 254 F.3d 654, 658 (7th Cir. 2001).

Assuming, for the moment—the issue will be considered further below, in connection with Newkirk's motion to dismiss—that Sears' claims are "minor disputes" which are subject to mandatory arbitration, then Newkirk has a defense of federal preemption: the claims must be dismissed to allow them to be arbitrated before the National Rail Adjustment Board. However, that in and of itself does not mean that the case was properly removed. A claim must "arise" under federal law to be removable:

> To determine whether the claim arises under federal law, we examine the "well pleaded" allegations of the complaint and ignore potential defenses: "[A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution. It is not enough that the plaintiff alleges some anticipated defense to his cause of action and asserts that the defense is invalidated by some provision of the Constitution of the United States." *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S. Ct. 42, 53 L. Ed. 126 (1908).

---

[2] This appears to be a colloquial reference to the CBA at issue.

*Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). A defense of federal preemption, therefore, does not ordinarily provide a basis for removal. *Pollitt v. Health Care Service Corp.*, 558 F.3d 615, 616 (7th Cir. 2009) ("Preemption is a defense, and a federal defense does not allow removal.").

An exception exists, however, when preemption is "complete," meaning that federal law completely occupies the field leaving no room for a state-law claim. In that circumstance, a plaintiff's claim is viewed as arising under federal law from its inception, and it may be removed to federal court. *Beneficial Nat'l Bank*, 539 U.S. at 8; *Pollitt*, 558 F.3d at 616. Newkirk argues that the RLA's preemption is complete, making removal proper. This is where things start to become less than clear.

The Seventh Circuit has held, in a case involving a tort claim of wrongful discharge under Illinois law, that preemption under the RLA is complete. *Graf v. Elgin, Joliet and Eastern Ry. Co.*, 790 F.2d 1341, 1346 (7th Cir. 1986). The *Graf* decision is 24 years old, however, and as defendant Newkirk has pointed out, greatly to his attorney's credit, one district court in this circuit has declined to follow it. *Lynch v. Bialcik*, 2009 WL 2058861 (E.D. Wis. 2009). The *Lynch* court explained that more recent Supreme Court precedent, as interpreted by appellate courts in other circuits, shows that *Graf* is no longer good law. Thus, *Lynch* held that any preemptive effect of the RLA to the state law claims asserted therein served as a defense only, and remanded the case to state court.

5

Another district court in this circuit has, however, considered the continued vitality of *Graf* in light of the discussion in *Lynch* and the conflicting precedent, and concluded that *Graf* is still the law of this circuit and must be followed. *Hughes v. United Airlines, Inc.*, 675 F. Supp. 2d 907, 909 (N.D. Ill. 2009). Because Sears has not argued this point, and, more importantly, because this court agrees with *Hughes*,[3] were it necessary to do so, it would follow *Graf*, and continue to give the RLA a completely preemptive effect. Thus, again assuming that Sears' claims are "minor disputes" subject to arbitration under the RLA, Newkirk's removal on the basis of complete preemption would be proper.

It is unnecessary, however, to definitively resolve whether or not *Graf* still stands, because of Newkirk's alternative basis for removal: the parties' diverse citizenship. Sears does not dispute that she and Newkirk are citizens of different states, but she argues that diversity does not exist because the amount in controversy is not greater than $75,000. Her reasoning is that, even assuming that she is entitled to damages in the

---

[3] *See Donohoe v. Consol. Operating & Prod. Corp.*, 30 F.3d 907, 910 (7th Cir. 1994) (cases in this circuit take a "firm position" on "underruling:" district judges must apply existing law of circuit even when they believe it mistaken). The court agrees, as the analysis in *Lynch* and the cases discussed therein shows, that *Graf*'s holding now appears doubtful. The problem, though, with concluding that *Graf* has been overruled is this: that conclusion derives from the Supreme Court's omission of any reference to the RLA in *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003) (Court has found complete preemption in two statutory categories, LMRA and ERISA): that is, interpreting that omission as a decision that the RLA does not provide complete preemption. The preemptive scope of the RLA was not before the Court in *Anderson*, however. Therefore, reading *Anderson* narrowly means that this court cannot conclude that *Graf* has been overruled and is no longer binding in this circuit without "underruling" the Court of Appeals.

amount of the maximum gain in income she might have realized had she been promoted, using the salary figures provided by Newkirk, that gain amounts to only $46,666.66, failing to exceed the $75,000.00 threshold. Sears' argument, however, does not take into account all of the damages she seeks in connection with her slander claim. In addition to damages for the injury to her career, she alleges that she has been reputationally and emotionally injured. (Complaint, DE # 1 at ¶ 8.) As the Indiana courts have recognized, in an appropriate case a jury can return a substantial sum as damages to compensate for reputational harm. *See Indianapolis Newspapers, Inc. v. Fields*, 254 Ind. 219, 255-56, 259 N.E.2d 651, 667 (1970); *Aafco Heating & Air Conditioning Co. v. Northwest Publications, Inc.*, 162 Ind. App. 671, 684 n. 8, 321 N.E.2d 580, 589 n. 8 (1974). In addition to that, there may be damages for emotional distress. *See Foxworthy v. Buetow*, 492 F. Supp. 2d 974, 987 (S. D. Ind. 2007).

 Although the removing defendant has the burden of showing that the evidentiary facts preponderate in favor of showing the amount-in-controversy requirement is met, it has been noted that this is difficult to do when a plaintiff is not required by state pleading rules to specify damages, and has no interest in being forced to litigate in federal court. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006). Removal is proper, therefore, when the defendant's estimate of the stakes is plausible. *Rubel v. Pfizer, Inc.*, 361 F.3d 1016, 1020 (7th Cir. 2004). Here, Sears concedes that her special damages—her potential lost income—are arguably near $50,000. Adding to that amount what may be substantial damages for injury to her reputation and emotional

7

well-being, it cannot be said with legal certainty that her claim is for less than the $75,000 diversity minimum,[4] and so she has not shown that the case should be remanded. *Oshana*, 472 F. 3d at 511. Because it appears that diversity jurisdiction exists, Sears' motion to remand will be denied.

*Newkirk's Motion to Dismiss*

There is no question that if a claim is a "minor dispute" under the RLA, the statute's mandatory arbitration provisions strip the courts of jurisdiction, and the claim must be dismissed. *Buell,* 480 U.S. at 562; *Brown*, 254 F.3d at 658. Newkirk argues that both counts of Sears' attempt to use "artful pleading" to cast what are minor disputes under the RLA as state-law torts.

As to Count II of Sears' complaint, which alleges that Newkirk tortiously interfered with Sears' "relationship with her employer," (Complaint, DE # 1 at ¶ 12), Newkirk argues that this must be a claim for tortious interference with a contractual relationship, because Sears' "relationship with her employer" was a contract of

---

[4] This is in spite of the affidavit Sears attached to her motion to remand, in which she avers that she does not seek more than $75,000 in damages. Such post-removal affidavits or stipulations are "ineffective to oust federal jurisdiction." *Chase v. Shop N' Save Warehouse Foods, Inc.*, 110 F.3d 424, 429 (7th Cir. 1997). Moreover, competent attorneys, such as those representing Sears, are aware that in order to prevent removal, such affidavits or stipulations must be filed in state court at the same time as the complaint initiating the action. *In the Matter of Shell Oil* Co., 970 F.2d 355, 356 (7th Cir. 1992). Although no court appears to have said as much, the failure to do so should be viewed as creating a presumption that more than $75,000 is sought. Otherwise, a plaintiff's failure to do so amounts to gamesmanship, preserving the ability to seek more than $75,000 in damages in state court if the defendant doesn't remove the cases, and the ability to argue that less is sought, if the defendant does remove.

employment. Notably, Sears voices no disagreement with this characterization of her claim. To succeed on a claim of tortious interference with a contractual relationship under Indiana law, one of the elements that Sears must prove is that Newkirk induced the IHB to break its contract of employment with Sears. *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1235 (Ind. 1994). That contract of employment is, of course, the CBA, and therefore, "evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract," making the claim a "minor dispute" subject to the RLA's mandatory arbitration procedures and requiring dismissal. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985); *see Hawaiian Airlines, Inc.*, 512 U.S. at 260 (citing *Allis-Chalmers Corp.*).[5]

Sears disagrees, but her argument essentially ignores the precedent discussed above, maintaining simply that:

> [T]he Railway Labor Act is inapplicable inasmuch as the present action is between two individuals, not a carrier and an individual. To the extent that the Railway Labor Act does apply, its application is secondary at best to the issues pled in this cause of action.

(DE # 14 at 4.) Newkirk points out in response that the Seventh Circuit rejected an identical argument in *Kimbro v. Pepsico, Inc.*, 215 F.3d 723 (7th Cir. 2000):

---

[5] The court notes that virtually every case it has reviewed while preparing this memorandum, involving tortious interference claims against employers, supervisors, co-workers and third parties in connection with either the LMRA or the RLA, has found implication of the labor agreement, requiring dismissal. Because the terms of the contract allegedly interfered with matter to such claims, it is "inevitable" that construction of the labor agreement is necessary to resolve them. *See Kimbro v. Pepsico, Inc.*, 215 F.3d 723, 727 (7th Cir. 2000)

> The difference between suing your employer for breach of contract and calling it tortious interference, and suing your supervisors for tortious interference, is one of form rather than of substance. For if supervisors are exposed to such liability the employer will either have to pay them higher wages to compensate them for the risk of being sued, or have to agree to indemnify them for the costs of such a suit. In either case the burden of the liability will come to rest on the employer, making it the de facto defendant in a de facto suit under state law for breach of a collective bargaining contract.

*Id.* at 727 (commenting on preemptive effect of § 301 of the Labor-Management Relations Act ).[6]

In reply, Sears argues that *Kimbro* is distinguishable, because the plaintiff in that case alleged tortious interference with a contractual right to progressive discipline—making interpretation of the applicable CBA necessary—while she is alleging that Newkirk's tortious interference prevented her from even obtaining an interview, making any interpretation of her CBA unnecessary:

> *Defendant's actions prevented the very implementation of the collective bargaining agreement.* No interpretation is necessary if its implementation was prevented. By way of example, no interpretation of the contract is necessary if Sears was denied even an interview, as is the case here.

(DE # 22 at 6.) (Emphasis added.) The problem with this argument is that its premise, which the court has italicized, contradicts the theory of liability Sears has pleaded, which is that Newkirk *interfered with* her business relationship with her employer, not that he prevented that relationship from coming into play. As already stated above, that

---

[6] The RLA preemption standard is "virtually identical" to that used for § 301 of the Labor-Management Relations Act. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260 (1994).

10

relationship is a contract of employment governed by a CBA, and the legal elements of Sears' claim require her to prove the contract was breached. Thus, Sears has to prove that she was eligible for promotion under the agreement, and so should have been interviewed—requiring interpretation of the agreement—because, otherwise, preventing her from obtaining an interview caused her no harm.

Sears also argues, in response to *Kimbro*'s point that allowing state tort suits against supervisors will make employers *de facto* defendants either because they will have to agree to either indemnification or higher pay, that the "opposite holds true as well." (DE # 22 at 8.) As Sears sees it, if actions like the one she has brought are not allowed, then:

> [E]mployers are automatically liable for actions wherein respondeat superior is inapplicable. Employers should not be subjected to potential liability, nor should they be required to indemnify acts outside the employer/employee relationship. Should employers be held liable for actions by an employee outside of the employment relationship, then employees will have to be paid lower wages to compensate the employer for incurring that additional risk.

(*Id*.) This argument isn't the "opposite" of *Kimbro*'s point, it is an acknowledgment, and rejection, of it. *Kimbro*'s point is that if such actions are allowed, *then* employers will ultimately bear the costs, even though respondeat superior does not apply. By not allowing the actions, employers can pay lower wages, *not* as compensation for the employer having additional risk, but instead because the employee has no risk requiring a higher wage, and because the employer will see the matter resolved through less-costly arbitration under the RLA.

11

Last, Sears argues that if her action is subject to complete preemption by the RLA, then she may be left without a remedy: "Such a ruling would in effect allow an employee one shot at remedying a wrong; if the employer is found not liable under the contract at arbitration, the employee is prevented from seeking redress against those who have taken actions outside of the contract." (*Id*.) This argument is illogical. Having "one shot at remedying a wrong" but having that shot fail isn't the same as being prevented from seeking redress at all.

More importantly, even if Sears' assessment of the situation is correct, her loss of a remedy isn't enough to overcome preemption and dismissal. After observing that complete preemption can in fact extinguish state tort rights and create a remedial gap, which gap could be closed by requiring exhaustion instead of the doctrine of preemption, the Seventh Circuit then stated:

> The Supreme Court appears, however, to have addressed the problem of the remedial gap in a different way. The rule seems to be that if the plaintiff's claim, ostensibly based on state law, cannot be adjudicated without interpretation of the collective bargaining agreement, the claim turns into a federal claim that the agreement itself has been violated. . . .
> So the remedial gap remains-maybe intentionally. Maybe the idea is that if a matter is one that the parties could regulate by contract . . . they ought to do so. . . . . . The analogy is to the principle of *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S. Ct. 773, 3 L. Ed. 2d 775 (1959), that the National Labor Relations Act preempts claims either arguably prohibited or arguably permitted by the Act, thus leaving a large area of no law for the Labor Board to fill. Here the no-law area would be for the parties to fill in the collective bargaining agreement.

*Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1180 (7th Cir. 1993). In other words, if Sears is left without a remedy for Newkirk's alleged conduct, that does seem

unfair, but it is an issue that can only be addressed by a court higher than this one. Because Sears' tortious interference claim cannot be resolved without inextricably intertwining the CBA, the claim must be dismissed.

Newkirk's argument as to Sears' slander claim in Count I of her complaint is not similarly convincing, however. Newkirk's argument is that under the LMRA and RLA, "many courts have held that claims brought under state law for defamation are preempted." (DE # 11 at 6.) Newkirk then cites a number of district court decisions, involving defamation claims against the employer itself to support his argument. Newkirk then cites two cases which he asserts show that "courts also have interpreted the LMRA to require dismissal of defamation claims against co-workers and supervisors." (DE # 11 at 7.)

The two cases cited are not so clear, however, and may in fact support Sears. In *Henegar v. Banta*, 27 F.3d 223 (6th Cir. 1994), Henegar filed a claim with his employer for reimbursement of the cost of hernia-repair surgery, alleging it to have been necessitated by a work-related injury. *Id*. at 224. His supervisor, Banta, initiated proceedings under the applicable labor agreement which resulted in Henegar's discharge for giving false information. *Id*. During those proceedings, Banta testified that Henegar had told him the hernia was a pre-existing injury. *Id*. Henegar then sued Banta for defamation, but the district court granted summary judgment, finding that the claim was preempted by the RLA. *Id*. The Sixth Circuit affirmed, stating:

> Banta made these statements in the course of an investigation of Henegar's personal injury claim. The investigation and the hearing were conducted in accordance with the collective bargaining agreement. Consequently, we conclude that the district court did not err in holding that Henegar's defamation claim was inextricably intertwined with the collective bargaining agreement and preempted under the RLA.

*Id.* at 226. On the present record, there is neither evidence nor allegation that Newkirk's remarks were anything other than gratuitous, and the issue whether they were slander does not necessarily implicate the CBA (other than, possibly, as to damages, which is addressed below).

In the second case, *Johnson v. Anheuser Busch, Inc.*, 876 F.2d 620 (8th Cir. 1989), Lewis and two other employees of Anheuser Busch ("AB") accused a co-worker, Johnson, of having slashed the tires on Lewis's car. *Id.* at 622. An investigation ensued, and Johnson was arrested and charged with destruction of property. *Id.* The criminal charges were later dismissed, but AB terminated Johnson's employment. *Id.* Among other claims, Johnson sued his fellow employees for slander, but the claims were dismissed as preempted by, and untimely under, the LMRA. *Id.* at 622-23.

The Eighth Circuit affirmed in part and reversed in part. It found that Johnson had alleged two forms of libel: one involving statements reduced to writing and seen internally at AB, resulting in his termination; and one involving statements Lewis had made in a claim filed with his insurance company. *Id.* at 624. The court found that the first was preempted by the LMRA, because the statements served as the basis for Johnson's termination, and the libel claim would, therefore, be "inextricably

intertwined" with consideration of the terms of the applicable labor agreement.[7] As to the alleged libel in statements made by Lewis in his insurance claim, however, the Eighth Circuit reversed:

> This same conclusion, however, cannot be reached with regard to Mr. Johnson's libel action against John Lewis individually. Although the same set of facts, i.e., the tire slashing, serves as the basis for each libel allegation, an analysis of the same factual predicate does not necessarily mean that a state-law tort claim cannot exist independently of the collective bargaining agreement. If no construction of the collective bargaining agreement need be made, a separate tort action can be maintained and preemption will not apply. Here, the elements necessary to prove the libel claim against Lewis, . . . do not require construction of any term of the collective bargaining agreement. Thus, section 301 preemption does not apply.

*Id*. at 624-25 (citations omitted).

Two aspects of this conclusion bear on the present case. First, after reading the state-law precedent *Johnson* cites as providing the elements for the libel claim, the court is not sure it appreciates the distinction *Johnson* draws as to two forms of libel being involved. Either the statements made constituted libel (and slander) under state law, or they didn't. In either case (Johnson's firing, or Lewis's insurance claim), construction of the labor agreement appears unnecessary to make that determination. Johnson's firing is different only in that the terms of the labor agreement might be relevant as a measure of the damages suffered.

---

[7] Johnson also claimed that his fellow employees' oral statements to AB were slander, and dismissal of that claim was affirmed for the same reason. *Id*. at 623-24.

The same is true as to damages in the present case, but that does not necessarily mean that the claim is preempted: the right being asserted is a right not to be defamed, which exists independently under state law, wholly apart from the terms of the CBA. *Hawaiian Airlines, Inc.*, 512 U.S. at 258. The question whether AB was motivated to fire Johnson because of the alleged slander, or in the present case, whether the IHB was motivated not to interview Sears because of Newkirk's alleged slander, might involve "attention to" provisions of the labor agreement, but that "parallelism" doesn't make state-law analysis dependent on contractal analysis, and so the state-law claim is independent for preemption purposes. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 408-410 (1988); *Hawaiian Airlines, Inc.*, 512 U.S. at 262.

Nevertheless, and the second point to be drawn from *Johnson*, even if that decision is followed to the letter, the court therein found that Johnson's defamation claims against Lewis for statements he made to an unrelated third party, his insurer, were not preempted. In the present case, Sears' complaint alleges that Newkirk's statements were "communicated *to third persons* and co-workers." (Complaint, DE # 1 at ¶ 7.) (Emphasis added.) Thus, the holding in *Johnson* means that at least this third-party aspect of Sears' slander claim is not preempted, and so the claim should not be dismissed, although some aspects of her damages might ultimately be cabined.

*Conclusion*

For the foregoing reasons, Sears' motion to strike (DE # 21) is **DENIED**; Sears' motion to remand (DE # 13) is **DENIED**; and Newkirk's motion to dismiss (DE # 10) is **GRANTED IN PART** and **DENIED IN PART**. Count I of Sears's complaint, alleging slander, remains pending; Count II, tortious interference, is dismissed.

**SO ORDERED.**

Date: September 2, 2010

 s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT